**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEAN MCCORMICK,<br><br>*Plaintiff*,<br><br>v.<br><br>JUDY KAPATA PAQUIN and RAYMOND ANGELORI,<br><br>*Defendants*. | Civil Action No.: 7:26-cv-6990<br><br>**COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Jean McCormick ("McCormick" or "Plaintiff"), through her undersigned counsel, brings this action against Defendants Judy Kapata Paquin ("Kapata") and Raymond Angelori ("Angelori") (collectively, "Defendants") and alleges as follows.

## NATURE OF THE ACTION

1. This action arises from Kapata and Angelori's calculated theft and commercial exploitation of McCormick's original artwork, which they commissioned and then appropriated, without ever paying McCormick, as the logo for "Judy After 50 Years," Kapata's self-professed social media "empire."

2. Angelori and Kapata knew that McCormick, a visual artist, had left full-time employment to become the full-time caregiver for her disabled adult daughter and therefore had limited time and means to devote to commissioned artwork. Angelori and Kapata nevertheless repeatedly urged McCormick to undertake the project, promising that McCormick would be compensated and specifically representing that the proceeds would benefit her daughter.

3. Instead, Angelori and Kapata took McCormick's finished artwork, proclaimed it to be their own, and built and monetized Kapata's self-described "empire" on McCormick's uncompensated work, using McCormick's original artwork not only as the logo for "Judy After

50," but as the dominant feature of merchandise marketed and sold to its audience of more than 400,000 followers.

4. When McCormick expressly told Angelori and Kapata that they had no permission to use her work, Angelori assured her that they were not using it, even though Kapata had already publicly claimed on Facebook that McCormick's work was Kapata's own copyrighted image and announced that she would sell t-shirts featuring McCormick's work, which numerous photographs on Facebook have since shown her followers wearing.

5. Kapata has since publicly celebrated the freedom that money affords, even as she and Angelori have paid McCormick nothing for artwork they appropriated and exploited for their own commercial benefit.

6. Kapata went further still. Kapata registered McCormick's artwork with the U.S. Copyright Office and certified that she herself was its sole author and copyright owner, a blatant and utter lie. Kapata has thus attempted to cloak her misappropriation with the imprimatur of a fraudulent federal copyright registration.

7. This action seeks redress for Angelori and Kapata's fraudulent registration and commercial exploitation of artwork they stole from McCormick through promises they never honored.

## PARTIES

8. Plaintiff Jean McCormick is an individual residing in Palm Beach Gardens, Florida.

9. Defendant Judy Kapata Paquin is an individual who on information and belief resides at 500 Highpoint Drive, PH14, Hartsdale, New York, 10530.

10. Defendant Raymond Angelori is an individual who on information and belief resides at 500 Highpoint Drive, PH14, Hartsdale, New York, 10530.

11. Kapata and Angelori are married to one another and at all relevant times acted in concert with, and, on information and belief, with the knowledge and consent of, one another with respect to the conduct alleged herein. On information and belief, Defendants engaged in the conduct alleged in this Complaint while located in Westchester County, New York, and while residing at 500 Highpoint Drive, PH14, Hartsdale, New York 10530.

## **JURISDICTION AND VENUE**

12. This Court has jurisdiction over Counts I, II, III, IV, V, and VI pursuant to 28 U.S.C. §§ 1331 and 1338(a), because they arise under the U.S. Copyright Act, 17 U.S.C. § 101, *et seq.*

13. This Court has jurisdiction over Count VII pursuant to 28 U.S.C. § 1367 because it arises from the same core facts giving rise to, and therefore forms part of the same case or controversy as, Counts I–VI.

14. This Court has general personal jurisdiction over Kapata and Angelori because they are citizens of New York.

15. This Court also has specific personal jurisdiction over Kapata and Angelori under N.Y. C.P.L.R. § 302(a), because they: transact business within New York and/or contract to supply goods or services in New York; committed a tortious act within New York; and/or own, use, and/or possess real property situated within New York.

16. Venue is proper pursuant to 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), and 1400(a).

17. This action is properly designated to White Plains because Kapata and Angelori both reside in Westchester County, New York.

## FACTS

### I. McCormick's background as a professional artist and the relationship between the parties.

18. McCormick is a visual artist. For several decades, she has worked in illustration, portraiture, and graphic design, both as a commissioned artist for private clients and in connection with her employment.

19. McCormick has historically charged fees of approximately $500 and above for commissioned illustration work of a scope comparable to the works at issue in this case.

20. From about 1988 until about 2008, McCormick worked at Sunningdale Country Club in Scarsdale, New York. During that period, she performed design work for the club, including redesigning the club's logo.

21. In about 2000, Angelori began providing information technology services to Sunningdale Country Club as an independent contractor. McCormick and Angelori met during this time, while both working at the club.

22. Over the following years, McCormick and Angelori developed a cordial working relationship and a personal acquaintance. Angelori regularly attended to computer problems at the club, including at McCormick's request, and the two spoke from time to time.

23. McCormick left Sunningdale Country Club in about 2008 to become the full-time caregiver for her adult daughter, who has a significant disability and requires continuous care.

24. McCormick and Angelori remained in intermittent contact thereafter.

### II. Defendants' request that McCormick create original artwork for Defendants to purchase.

25. In about February 2023, Angelori telephoned McCormick and asked her, on his own behalf and on behalf of his wife, Kapata, to create original artwork for them.

26. Angelori first asked McCormick to create cover artwork for a book he was writing about how he and Kapata met (the "Book Cover"). The requested Book Cover was to depict two bearded cats.

27. Angelori also asked McCormick to create a second original illustration depicting Kapata and celebrating her Zambian heritage (the "Work").

28. McCormick initially declined the request.

29. Angelori knew McCormick's circumstances. McCormick had told Angelori that she left full-time employment to become her daughter's caregiver.

30. Angelori persisted, and he framed his repeated request around those circumstances. With respect to the Work in particular, Angelori told McCormick that the associated project would generate proceeds benefitting McCormick's daughter, potentially via a special needs trust.

31. Accordingly, Angelori further agreed, on his own behalf and on behalf of Kapata, that they would compensate McCormick for the Work.

32. In reliance upon those representations and her prior relationship with Angelori, McCormick agreed to undertake the project. McCormick would not have agreed to devote work to the project absent Angelori's assurances that she would be compensated and that the proceeds would benefit her daughter.

33. The parties never executed any written agreement of any kind concerning the Book Cover or the Work. Among other things, McCormick never agreed that the Book Cover or the Work would be a "work made for hire" or that her copyrights would be owned by either Defendant on any other basis. McCormick also never agreed to assign, transfer, or license any copyright or any other right in the Book Cover or the Work to either Kapata or Angelori.

**III. Creation of the Work, solely authored by McCormick.**

34. What followed was a months-long creative process. Throughout 2023, McCormick devoted substantial time, skill, judgment, and creative effort to authoring the Book Cover and the Work.

35. Over the course of several months, McCormick prepared numerous draft sketches and revisions of the Book Cover and the Work in response to comments and requests from Angelori and Kapata concerning their preferences for various aspects of the same.

36. McCormick conceived and executed every expressive element of the Book Cover and the Work. At most, Angelori and Kapata communicated ideas.

37. McCormick completed the Book Cover in or about May 2023 and thereafter turned to the Work.

38. Throughout June and July 2023, McCormick provided Defendants with successive draft sketches of the Work.

39. Throughout the project, Angelori acted as the conduit between McCormick and Kapata. McCormick transmitted drafts of the Work to Angelori, who in turn communicated them to Kapata and relayed Kapata's comments and approval back to McCormick.

40. For example, on or around July 13, 2023, McCormick sent Angelori the following draft sketch[1] via text message, explaining that she intended to incorporate colors inspired by the Zambian flag to pay tribute to Kapata's Zambian heritage, including in the coloration of the giraffe featured in the Work.



41. Upon receiving McCormick's draft and suggestions concerning updates to the same, Angelori responded via text message, "Yesssss," and further, "My wife says yes."




[1] Due to the reproduction process, the colors appearing in certain images reproduced in this Complaint (*e.g.*, in Paras. 40 and 42) may differ from those appearing in the original images.

42. As shown below, on July 21, 2023, McCormick sent Angelori via text message a nearly completed sketch of the Work, and Angelori responded, "Omg.....perfectttttt."




43. Shortly thereafter, in July 2023, McCormick completed the Work and asked Angelori via text message for Angelori's address so that McCormick could eventually send a copy of the completed Work to Defendants. A copy of McCormick's completed Work is below.



44. Angelori did not respond.

45. By about December 16, 2023, having received no further instructions concerning the Work from Angelori or Kapata, McCormick contacted Angelori via text message to inquire whether Defendants still intended to proceed with purchase of the Work. In response the same day, Angelori stated, “Yes… we haven’t done anything with it,” presumably referring to the near-final draft of the Work McCormick had sent to Angelori in July 2023.




**IV. McCormick’s express denial of Defendants’ permission to use the Work, and Defendants’ unequivocal promise not to do so.**

46. On June 5, 2024, McCormick and Angelori spoke by telephone. During the call, Angelori told McCormick that Defendants had gone with a different artist for their project and offered to pay McCormick the sum of $150 for the Work. McCormick considered that sum grossly inadequate considering the substantial time, skill, and creative effort she had invested in creating the Work. McCormick rejected Defendants’ offer and ended the call.

47. On June 6, 2024, McCormick expressly informed Kapata and Angelori that they had no permission to use her work. By text message, McCormick told them, via Angelori, "Thanks but no thanks. You have no permission to use my work, by doing so you will be sued."




48. On the same day, Angelori responded, among other things, "We don't use ur logo…bye."



**V. Defendants' theft and commercial exploitation of McCormick's Work.**

49. Angelori's June 6, 2024 representation that Defendants would not use the Work was a blatant lie, as McCormick would later discover in May 2025.

50. In May 2025, McCormick visited Kapata's public-facing Facebook page and discovered for the first time the below Facebook post that Kapata had published on May 28, 2024, prominently featuring the Work, several days before Angelori told McCormick, "We don't use ur logo."




51. On information and belief, Kapata obtained this copy of the Work from Angelori.

52. As shown below, referring to the Work, the caption authored by Kapata reads, "This is my copyrighted Judy after 50 years logo. All t shirts will be printed and sold with this logo. Website coming soon. You can not print any t shirt with logo without my permission. My page is a business with a bank account in the USA [] now."




53. The post featured an unauthorized verbatim copy of McCormick's Work, except that Kapata and Angeori appeared to have added their own copyright symbol, as shown more clearly below.




54. Kapata's May 28, 2024 Facebook post made clear that Angelori's and her appropriation of the Work was commercial in purpose. Kapata did not merely display McCormick's artwork or claim it as her own. She expressly announced that "all t shirts will be printed and sold with this logo," that a commercial website was forthcoming, and that her Facebook page was "a business with a bank account in the USA."

55. Indeed, Kapata's Facebook page is not merely a personal page. Kapata uses her Facebook page as a promotional platform for "Judy After 50 Years," a substantial public-facing social-media brand with an audience of more than 400,000 followers.

56. The content Kapata publishes under the "Judy After 50 Years" brand centers on Kapata herself and her lifestyle as a woman over 50. Through photographs, videos, and written posts, Kapata: documents her travel, exercise, outdoor activities, family, social life, and connections to Zambia; publishes motivational content concerning confidence, self-love, and enjoying life after 50; and regularly engages directly with the followers and fans of "Judy After 50 Years." Many of her posts also feature Angelori.

57. Kapata also uses the "Judy After 50 Years" Facebook page to promote merchandise featuring the Work. The below image is from a video posted on September 7, 2025, in which Kapata is promoting sales of t-shirts prominently featuring the Work.




58. Kapata's May 28, 2024 announcement that McCormick's Work was "my copyrighted Judy after 50 years logo," that "[a]ll t shirts will be printed and sold with this logo," that a "[w]ebsite [was] coming soon," and that her page was "a business with a bank account in

the USA" reflected a deliberate effort to exploit McCormick's Work as the logo for Kapata's "empire."

59. Kapata purported to convert McCormick's Work into the proprietary logo of Defendants' business, claiming ownership of the Work, asserting the exclusive right to control who could reproduce it, and using that asserted ownership to manufacture and sell merchandise bearing the Work, all without paying McCormick or obtaining any right to use it.

60. On information and belief, Kapata thereafter caused t-shirts bearing the Work to be manufactured, advertised, distributed, and sold to members of the public. Kapata's public Facebook activity reflects an ongoing merchandising operation involving the production and distribution of "Judy After 50 Years" t-shirts. Examples are provided below.









61. Kapata herself has publicly described "Judy After 50 Years" as a significant commercial enterprise. In addition to referring to her "business with a bank account in the USA," as alleged above, in another Facebook post shown below, Kapata referred to having "4 people on salary managing [Kapata's] page."

**Judy after 50 years**
April 8 ·

Happy birthday Pathfindering with God aka Mercy. One of the people that work for Judy after 50 years. I have 4 people on salary managing my page. I have employed 4 youths. Hopefully to employ more in future. May God bless you and give you everything you desire. I am blessed to have you on board. Enjoy your day kiddo. @topfans #followers #everyonehighlightsfollowers

62. In another Facebook post shown below, Kapata referred to her efforts concerning "Judy After 50 Years" brand as "building an empire[.]"


Judy after 50 years
May 11 ·
Keep showing up and until it makes sense. I am building an empire **Judy after 50 years**. That fire inside you it's your destiny. **#empire #keepgoing #dontgiveup**

63. Kapata's Facebook posts emphasize the commercial success of her "empire" and the personal freedom it has afforded her. In a recent Facebook post, alongside a series of photos of herself dining out at a restaurant, Kapata wrote, "Money doesn't buy you happiness…..but it does allow you the freedom to find your happiness[.]"


Judy after 50 years
1d ·
Money doesn't buy you happiness.....but it does allow you the freedom to find your happiness.... #fabulousover50 #lifeover50 #womenover50 #virals
555 254 187

64. Kapata publicly flaunts the freedom that money affords while building her self-described "empire" on artwork that Kapata and Angelori stole from McCormick without paying her. They have used McCormick's Work not only as the enterprise's logo a, but as the dominant feature of the principal merchandise they market and sell to more than 400,000 followers. Defendants have done so knowing that McCormick left full-time employment to care for her disabled daughter and that Angelori had persuaded McCormick to undertake the project by representing that she would be compensated and that the proceeds would benefit her daughter. Kapata and Angelori nevertheless have paid McCormick nothing, while using her uncompensated Work for their own commercial benefit.

65. In May 2024, by publicly representing that the Work was "my copyrighted" logo and that others required "my permission" to reproduce it, Kapata held herself out as the lawful owner of, and source of authority over, the Work, thereby facilitating her unauthorized reproduction and sale of merchandise bearing the Work and concealing McCormick's ownership. Kapata's false assertion of copyright ownership over the Work has been integral to her unauthorized commercial exploitation of the Work.

66. On information and belief, Kapata and Angelori have received revenues from the sale of merchandise bearing the Work.

67. The full extent of Kapata's sales activities, including the number of articles produced and sold, revenues received, profits earned, and persons involved in the manufacture, distribution, and sale of the merchandise, is presently within Kapata's knowledge and control and will be determined through discovery.

68. Kapata's commercial exploitation of the Work was not accidental or undertaken under any mistaken belief that McCormick had consented. By the time Kapata embarked upon

her merchandising activities, she knew that McCormick was the artist who had created the Work, knew that neither Angelori nor she had ever paid McCormick any compensation, and, by no later than June 6, 2024, Angelori and Kapata had been told expressly in writing that they had no permission to use the Work. Kapata nevertheless continued to exploit the Work commercially.

**VI. Kapata's fraudulent registration of the Work.**

69. Prompted by Kapata's May 28, 2024 false representation on Facebook that the Work was Kapata's "copyrighted" logo, McCormick searched the public records of the U.S. Copyright Office for Kapata's name. In doing so, McCormick learned that Kapata had registered a visual work with the Copyright Office titled, "Judy After 50 Years," under Reg. No. VAu 1-524-919 (the "Kapata Registration"), having an effective date of registration of February 2, 2024, and identifying Kapata as sole author and claimant. A copy of the U.S. Copyright Office's public record concerning the Kapata Registration is attached hereto as **Exhibit A**.

70. To confirm her suspicion that Kapata had fraudulently registered McCormick's Work as Kapata's own, McCormick caused a request to be submitted to the U.S. Copyright Office for a copy of the Kapata Registration's deposit.

71. In April 2026, the U.S. Copyright Office fulfilled McCormick's request and provided the following image as the work covered by the Kapata Registration. Indeed, it is a verbatim copy of the Work. A true and correct copy of the Kapata Registration's deposit is attached hereto as **Exhibit B**.




72. In the application resulting in the Kapata Registration, Kapata certified that the statements made in the application were correct to the best of her knowledge, including, among other things, Kapata's representation that she was the sole author of the Work and that she is sole claimant to the copyright in the Work.

73. But those representations were blatantly false. McCormick, not Kapata, is the sole author of the Work deposited with the Copyright Office in connection with the Kapata Registration. Kapata authored no part of the Work. The work was not created by Kapata, was not prepared as a work made for hire for Kapata, and was never assigned or licensed to Kapata. Kapata holds no right, title, or interest in the Work whatsoever.

74. Kapata knew that her representations were false at the time the application giving rise to the Kapata Registration was submitted. Kapata knew that McCormick was the artist and author. There are no facts upon which Kapata could have reasonably believed herself to be the author of the Work. Kapata received McCormick's drafts, reviewed them, and transmitted comments and revision requests on them through Angelori over a period of months.

75. On information and belief, Kapata knew that McCormick had: never been paid for the work; rejected Defendants' $150 offer; and expressly refused Defendants permission to use the Work and had stated that any use would result in a lawsuit.

76. The Work is not a work made for hire owned by either Kapata or Angelori. McCormick was never an employee of either Kapata or Angelori.

77. The Work is not a joint work within the meaning of 17 U.S.C. § 101. McCormick did not author the Work with the intention that her contribution be merged with any contribution of either Kapata or Angelori into inseparable or interdependent parts of a unitary whole, and neither Kapata nor Angelori contributed any independently copyrightable expression to the Work.

78. Whatever Defendants contributed to the project consisted of ideas, facts, subject matter, and expressions of personal preference: the wish that the artwork honor Kapata, the request that it evoke Zambia, the desire that it include particular subjects, and reactions to McCormick's drafts. None of that is copyrightable.

79. McCormick has never transferred any ownership interest in the copyrights in the Works. No assignment signed by McCormick exists, as would be required by 17 U.S.C. § 204(a).

80. McCormick never granted Defendants any license, express or implied, to reproduce, distribute, display, or prepare derivative works based upon the Works.

81. Kapata nowhere in her application for registration of the Work disclosed to the Copyright Office that the Work had been authored by another person, did not identify the Work as one incorporating or derived from material authored by another person, and did not limit her claim in any respect.

82. The inaccurate information Kapata submitted to the U.S. Copyright Office was material. Authorship, ownership, and the basis of the claim are among the facts on which the Register of Copyrights determines registrability. Had the Register of Copyrights known that Kapata was not the author of the deposited Work, had contributed no original expression to it, and held no rights in it by transfer or otherwise, the Register would have refused registration.

83. The Copyright Office relied upon Kapata's misrepresentations. The Copyright Office had no means of knowing that the deposited Work had been authored by someone other than Kapata, and it issued the Kapata Registration in reliance on Kapata's false certification that the statements in her application were correct.

**VII. McCormick's registration of the Work.**

84. McCormick is the sole author and sole owner of all right, title, and interest in and to the Work, including all copyrights therein.

85. McCormick registered the Work with the U.S. Copyright Office under Reg. No. VAu 1-582-230, with an effective date of registration of December 2, 2025 (the "McCormick Registration"). A true and correct copy of the McCormick Registration is attached hereto as **Exhibit C**.

86. The McCormick Registration covers two illustrations, identified in the application as "Untitled 1" and "Untitled 2." The work identified as "Untitled 1" is the Work at issue in this action. The work identified as "Untitled 2" is the Book Cover.

87. The Works have not been published within the meaning of 17 U.S.C. § 101. Any public distribution of copies of the Work by Defendants has been without authorization by McCormick, the Work's sole copyright owner, and therefore did not constitute publication as that term is defined under the Copyright Act.

**COUNT I**
**Direct copyright infringement**
**U.S. Copyright Act, 17 U.S.C. § 501**
**Against all Defendants**

88. McCormick repeats and incorporates by reference her allegations in the preceding paragraphs as if set forth fully herein.

89. The Work is an original copyrightable work.

90. McCormick is the sole author and owner of the copyright in the Work, which is the subject of the McCormick Registration, Reg. No. VAu 1-582-230, having an effective date of registration of December 2, 2025, identifying McCormick as sole copyright claimant.

91. By the actions alleged above, Defendants have infringed McCormick's copyright in the Work by their unauthorized reproduction, preparation of derivative works, distribution, and public display of the Work.

92. As alleged above, the actions of Defendants were willful and knowing. Defendants knew McCormick was the author of the Work, knew they had not paid her, and were expressly told in writing that they had no permission to use her Work.

93. As a direct and proximate result of the copyright infringement detailed herein, McCormick has been and continues to be damaged in an amount unknown at the present and to be determined at trial.

94. McCormick is entitled to recover her actual damages and any additional damages from Defendants' profits not calculated in the computation of her actual damages, in an amount to be determined at trial, pursuant to 17 U.S.C. § 504.

95. McCormick is also entitled to seek statutory damages of up to $150,000 pursuant to 17 U.S.C. § 504(c), as to all infringements for which such statutory damages are available under 17 U.S.C. § 412.

96. McCormick has no adequate remedy at law. Defendants' continuing infringement causes and will continue to cause irreparable injury to McCormick, including injury to her reputation and to her control over her own Work, unless enjoined by this Court.

97. McCormick is entitled to permanent injunctive relief enjoining and restraining Defendants from any further infringement of McCormick's copyrights in the Work.

98. McCormick is entitled to recover from Defendants her full costs of this action, pursuant to 17 U.S.C. § 505.

99. McCormick is entitled to recover from Defendants her reasonable attorneys' fees in this action, pursuant to 17 U.S.C. § 505, as to all infringements for which such fees are available under 17 U.S.C. § 412.

## COUNT II
**Contributory copyright infringement**
**U.S. Copyright Act, 17 U.S.C. § 501**
**Against Defendant Angelori**

100. McCormick repeats and incorporates by reference her allegations in the preceding paragraphs as if set forth fully herein.

101. The Work is an original copyrightable work.

102. McCormick is the sole author and owner of the copyrights in the Work, which is the subject of the McCormick Registration, Reg. No. VAu 1-582-230, having an effective date of registration of December 2, 2025, identifying McCormick as sole copyright claimant.

103. By the actions alleged above, Kapata has directly infringed McCormick's copyrights in the Work by Kapata's unauthorized reproduction, preparation of derivative works, distribution, and public display of the Work.

104. As alleged above, Kapata's actions were willful and knowing. Kapata and Angelori knew McCormick was the author of the Work, knew they had not paid her, and were expressly told in writing that they had no permission to use her Work.

105. Angelori had full contemporaneous knowledge of Kapata's infringing acts.

106. Indeed, Angelori actively and intentionally induced, caused, and materially contributed to Kapata's infringement of the Work.

107. By providing Kapata with access to, and copies of, the Work, Angelori provided Kapata with the tools and support for Kapata's direct infringement of the Work.

108. Accordingly, in addition to being liable as a direct infringer himself, Angelori is also contributorily liable for the acts of direct copyright infringement committed by Kapata.

109. As a direct and proximate result of the copyright infringement detailed herein, McCormick has been and continues to be damaged in an amount unknown at the present and to be determined at trial.

110. McCormick is entitled to recover her actual damages and any additional damages from Defendants' profits not calculated in the computation of her actual damages, in an amount to be determined at trial, pursuant to 17 U.S.C. § 504.

111. McCormick is also entitled to seek statutory damages of up to $150,000 pursuant to 17 U.S.C. § 504(c), as to all infringements for which such statutory damages are available under 17 U.S.C. § 412.

112. McCormick has no adequate remedy at law. Defendants' continuing infringement causes and will continue to cause irreparable injury to McCormick, including injury to her reputation and to her control over her own Work, unless enjoined by this Court.

113. McCormick is entitled to permanent injunctive relief enjoining and restraining Defendants from any further infringement of McCormick's copyrights in the Work.

114. McCormick is entitled to recover from Defendants her full costs of this action, pursuant to 17 U.S.C. § 505.

115. McCormick is entitled to recover from Defendants her reasonable attorneys' fees in this action, pursuant to 17 U.S.C. § 505, as to all infringements for which such fees are available under 17 U.S.C. § 412.

**COUNT III**
**Provision of false copyright management information**
**Digital Millennium Copyright Act, 17 U.S.C. § 1202(a)(1)**
**Against Defendant Kapata**

116. McCormick repeats and incorporates by reference her allegations in the preceding paragraphs as if set forth fully herein.

117. On May 28, 2024, Kapata published the following statement via Facebook alongside a copy of McCormick's Work: "This is my copyrighted Judy after 50 years logo. All t shirts will be printed and sold with this logo. Website coming soon. You can not print any t shirt with logo without my permission. My page is a business with a bank account in the USA [] now."

118. The statement, "This is my copyrighted Judy after 50 years logo," constitutes, or otherwise contains, copyright management information ("CMI") as defined under 17 U.S.C. § 1202(c), including, without limitation, 17 U.S.C. §§ 1202(c)(1)–(3).

119. That statement was false. The copyright in the Work does not belong to Kapata; it belongs to McCormick.

120. The statement, "You can not print any t shirt with logo without my permission," also constitutes, or otherwise contains, CMI as defined under 17 U.S.C. § 1202(c), including, without limitation, 17 U.S.C. § 1202(c)(6).

121. That statement was also false. Kapata had no authority to grant or withhold permission to reproduce the Work because she neither owned the copyright nor possessed any license or other authorization from McCormick permitting her to exercise McCormick's exclusive rights in the Work.

122. Kapata knew that the CMI was false. She knew that McCormick had created the Work, that Kapata had not obtained an assignment of McCormick's copyright, and that McCormick had not authorized Kapata or the other Defendants to reproduce, distribute, display, or otherwise exploit the Work.

123. Kapata nevertheless provided the false CMI alongside a copy of the Work while announcing that Defendants would reproduce the Work on t-shirts, sell those t-shirts, and use the Work in connection with a forthcoming website.

124. Kapata provided the false CMI knowingly and with the intent to induce, enable, facilitate, or conceal the unauthorized reproduction, distribution, display, and commercial exploitation of McCormick's Work, in violation of 17 U.S.C. §§ 1202(a)(1).

125. The false CMI made Defendants' infringement appear lawful. It concealed McCormick's ownership and falsely represented to those manufacturing, distributing, purchasing, or otherwise dealing with merchandise bearing the Work that Kapata possessed authority to authorize its reproduction and sale.

126. McCormick has suffered actual damages as a result of the acts complained of herein in an amount unknown at present and to be determined at trial.

127. Kapata has gained profits that are attributable to the acts complained of herein in an amount unknown at present and to be determined at trial.

128. McCormick is entitled to recover from Kapata her actual damages and any additional profits not taken into account in computing McCormick's actual damages, pursuant to 17 U.S.C. § 1203(c)(2).

129. In the alternative, and at McCormick's election, for each and every violation of 17 U.S.C. §§ 1202(a)(1), the full extent of which is unknown to McCormick at present and which will be proven at trial, McCormick is entitled to recover from Kapata statutory damages of up to $25,000, but not less than $2,500, per violation, pursuant to 17 U.S.C. § 1203(c)(3)(B).

130. McCormick is entitled to permanent injunctive relief to prevent or restrain further violations of 17 U.S.C.§ 1202(a) by Kapata, pursuant to 17 U.S.C. § 1203(b)(1).

131. McCormick is entitled to recover her full costs from Kapata pursuant to 17 U.S.C. § 1203(b)(4).

132. McCormick is further entitled to recover her attorneys' fees from Kapata pursuant to 17 U.S.C. § 1203(b)(5).

**<u>COUNT IV</u>**
**Distribution of false copyright management information**
**Digital Millennium Copyright Act, 17 U.S.C. § 1202(a)(2)**
**Against Defendant Kapata**

133. McCormick repeats and incorporates by reference her allegations in the preceding paragraphs as if set forth fully herein.

134. On May 28, 2024, Kapata published the following statement via Facebook alongside a copy of McCormick's Work: "This is my copyrighted Judy after 50 years logo. All t shirts will be printed and sold with this logo. Website coming soon. You can not print any t shirt with logo without my permission. My page is a business with a bank account in the USA [] now."

135. The statement, "This is my copyrighted Judy after 50 years logo," constitutes, or otherwise contains, CMI as defined under 17 U.S.C. § 1202(c), including, without limitation, 17 U.S.C. §§ 1202(c)(1)–(3).

136. That statement was false. The copyright in the Work does not belong to Kapata; it belongs to McCormick.

137. The statement, "You can not print any t shirt with logo without my permission," also constitutes, or otherwise contains, CMI as defined under 17 U.S.C. § 1202(c), including, without limitation, 17 U.S.C. § 1202(c)(6).

138. That statement was also false. Kapata had no authority to grant or withhold permission to reproduce the Work because she neither owned the copyright nor possessed any license or other authorization from McCormick permitting her to exercise McCormick's exclusive rights in the Work.

139. Kapata knew that the CMI was false. She knew that McCormick had created the Work, that Kapata had not obtained an assignment of McCormick's copyright, and that

McCormick had not authorized Kapata or the other Defendants to reproduce, distribute, display, or otherwise exploit the Work.

140. Kapata nevertheless distributed the false CMI alongside a copy of the Work while announcing that Defendants would reproduce the Work on t-shirts, sell those t-shirts, and use the Work in connection with a forthcoming website.

141. Kapata distributed the false CMI knowingly and with the intent to induce, enable, facilitate, or conceal Defendants' unauthorized reproduction, distribution, display, and commercial exploitation of McCormick's Work, in violation of 17 U.S.C. § 1202(a)(2).

142. The false CMI made Defendants' infringement appear lawful. It concealed McCormick's ownership and falsely represented to those manufacturing, distributing, purchasing, or otherwise dealing with merchandise bearing the Work that Kapata possessed authority to authorize its reproduction and sale.

143. McCormick has suffered actual damages as a result of the acts complained of herein in an amount unknown at present and to be determined at trial.

144. Kapata has gained profits that are attributable to the acts complained of herein in an amount unknown at present and to be determined at trial.

145. McCormick is entitled to recover from Kapata her actual damages and any additional profits not taken into account in computing McCormick's actual damages, pursuant to 17 U.S.C. § 1203(c)(2).

146. In the alternative, and at McCormick's election, for each and every violation of 17 U.S.C. §§ 1202(a)(2), the full extent of which is unknown to McCormick at present and which will be proven at trial, McCormick is entitled to recover from Kapata statutory damages of up to $25,000, but not less than $2,500, per violation, pursuant to 17 U.S.C. § 1203(c)(3)(B).

147. McCormick is entitled to permanent injunctive relief to prevent or restrain further violations of 17 U.S.C.§ 1202(a) by Kapata, pursuant to 17 U.S.C. § 1203(b)(1).

148. McCormick is entitled to recover her full costs from Kapata pursuant to 17 U.S.C. § 1203(b)(4).

149. McCormick is further entitled to recover her attorneys' fees from Kapata pursuant to 17 U.S.C. § 1203(b)(5).

**COUNT V**
**Declaratory judgement**
**Invalidity of Reg. No. VAu 1-524-919 due to fraud on the Copyright Office**
**Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202**
**Against Defendant Kapata**

150. McCormick repeats and incorporates by reference her allegations in the preceding paragraphs as if set forth fully herein.

151. An actual, justiciable, and continuing controversy exists between McCormick and Kapata concerning the validity and enforceability of the Kapata Registration and concerning the ownership of the copyright in the Work. Kapata has obtained a registration purporting to cover McCormick's Work, has publicly asserted she owns copyright in that Work, and has exploited that Work commercially. McCormick asserts that she is the sole author and owner of the Work and that the Kapata Registration is invalid.

152. The Kapata Registration for the Work reflects Kapata's knowingly false representations that Kapata is the sole author and copyright claimant of the Work, and it contains no reference whatsoever to McCormick, the author of the Work.

153. McCormick is entitled to a declaration that she is the sole author and owner of all copyrights in the Work.

154. McCormick is entitled to a declaration that Kapata procured the Kapata Registration by fraud and that the Kapata Registration is invalid.

155. McCormick is entitled to a declaration directing Kapata to voluntarily cancel the Kapata Registration with the U.S. Copyright Office in accordance with Sections 1807.4(E)–(F) of the Compendium (Third) of U.S. Copyright Office Practices.

**COUNT VI**
**Declaratory judgement**
**Invalidity of Reg. No. VAu 1-524-919 via referral to the Register of Copyrights**
**Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202; 17 U.S.C. § 411(b)(2)**
**Against Defendant Kapata**

156. McCormick repeats and incorporates by reference her allegations in the preceding paragraphs as if set forth fully herein.

157. An actual, justiciable, and continuing controversy exists between McCormick and Kapata concerning the validity and enforceability of the Kapata Registration and concerning the ownership of the copyright in the Work. Kapata has obtained a registration purporting to cover McCormick's Work, has publicly asserted she owns copyright in that Work, and has exploited that Work commercially. McCormick asserts that she is the sole author and owner of the work and that the Kapata Registration is invalid.

158. The Kapata Registration for the Work reflects Kapata's knowingly false representations that Kapata is the sole author and copyright claimant of the Work, and it contains no reference whatsoever to McCormick, the author of the Work.

159. McCormick is entitled to a declaration that she is the sole author and owner of all copyrights in the Work.

160. McCormick is entitled to a declaration that the Kapata Registration is invalid and unenforceable.

161. Pursuant to 17 U.S.C. § 411(b)(2), McCormick respectfully requests that the Court request the Register of Copyrights to advise the Court whether the inaccurate information described herein, if known, would have caused the Register to refuse registration.

162. McCormick is entitled to a declaration directing Kapata to voluntarily cancel the Kapata Registration with the U.S. Copyright Office in accordance with Sections 1807.4(E)–(F) of the Compendium (Third) of U.S. Copyright Office Practices.

**COUNT VII**
**Unjust enrichment and *quantum meruit***
**New York law**
**Against Defendants Kapata and Angelori**

163. McCormick repeats and incorporates by reference her allegations in the preceding paragraphs as if set forth fully herein.

164. In creating the Work, McCormick performed services in good faith at Defendants' request, over a period of months and at Defendants' repeated direction.

165. Defendants accepted those services. They reviewed McCormick's drafts, requested revisions, and expressed approval of the results.

166. McCormick reasonably expected compensation for those services, and Defendants expressly agreed to compensate her for her time and for the cost of her supplies.

167. McCormick performed her services for Defendants in reliance on the promise of compensation.

168. Defendants have paid McCormick nothing.

169. Defendants nonetheless have used, and are using, the product of McCormick's uncompensated services for their own commercial benefit. Defendants have received and retained the benefit of the very services for which they had agreed to compensate McCormick.

170. The reasonable value of McCormick's services and materials shall be proven at trial, considering the time expended, nature of the commissioned work, McCormick's customary charges for comparable commissions, and cost of materials.

171. Equity and good conscience do not permit Defendants to retain the benefit of McCormick's services without compensating her.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff McCormick respectfully requests that this Court enter judgment in her favor and against Defendants Kapata and Angelori, and award the following relief:

A. Under Count I, an order adjudging Defendants Kapata and Angelori liable for direct copyright infringement in violation of 17 U.S.C. § 501;

B. Under Count II, an order adjudging Defendant Angelori liable for contributory copyright infringement in violation of 17 U.S.C. § 501;

C. Under Count III, an order adjudging Defendant Kapata liable for the provision of false copyright management information under 17 U.S.C. § 1202(a)(1);

D. Under Count IV, an order adjudging Defendant Kapata liable for the distribution of false copyright management information under 17 U.S.C. § 1202(a)(2);

E. Under Count V, a declaration that U.S. Copyright Reg. No. VAu 1-524-919 was fraudulently obtained and is invalid;

F. Under Count VI, a declaration that U.S. Copyright Reg. No. VAu 1-524-919 is invalid;

G. Under Count VII, an order adjudging Defendants Kapata and Angelori liable for unjust enrichment and *quantum meruit* under New York law;

H. An order adjudging that the acts of copyright infringement by Defendants Kapata and Angelori were willful and that Kapata and Angelori acted in bad faith;

I. An award of monetary damages according to proof at trial;

J. An order requiring Defendants Kapata and Angelori to provide an accounting of any and all profits derived by them by reason of their acts complained of herein;

K. An award of statutory damages pursuant to 17 U.S.C. § 504(c)(2) for the acts of copyright infringement by Defendants Kapata and Angelori;

L. An award of statutory damages pursuant to 17 U.S.C. § 1203(c)(3) for each of Kapata's acts of providing false copyright management information;

M. An award of statutory damages pursuant to 17 U.S.C. § 1203(c)(3) for each of Kapata's acts of distributing false copyright management information;

N. An award of McCormick's costs and attorneys' fees pursuant to 17 U.S.C. § 505;

O. An award of McCormick's costs and attorneys' fees pursuant to 17 U.S.C. §§ 1203(b)(4)–(5);

P. An award of all interest as allowed by law;

Q. An order permanently enjoining Defendants Kapata and Angelori and any of their agents, employees, attorneys, representatives, successors, and assigns from further acts of copyright infringement, provision and distribution of false copyright management information, and unjust enrichment;

R. An order for the destruction of all infringing copies of the Work in the possession and control of Defendants Kapata and Angelori and of all articles by means of which such copies may be reproduced, pursuant to 17 U.S.C. § 503(b);

S. An order directing Defendant Kapata to voluntarily cancel Reg. No. VAu 1-524-919 with the U.S. Copyright Office in accordance with Sections 1807.4(E)–(F) of the Compendium (Third) of U.S. Copyright Office Practices;

T. An order providing for the Court's retention of jurisdiction of this action for the purpose of enabling McCormick to apply to the Court at any time for such further orders and interpretation or execution of any order entered in this action, for the modification of any such

order, for the enforcement and compliance therewith, and for the punishment of any violations thereof; and

U. An award of any other relief that the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury for all claims for relief herein and all issues so triable.

Dated: August 17, 2026

Respectfully submitted,

LEASON ELLIS LLP

Tatsuya Adachi
One North Lexington Avenue, Suite 1200
White Plains, New York 10601
Tel.: 914.288.0022
adachi@leasonellis.com
lelitdocketing@leasonellis.com

*Attorneys for Plaintiff Jean McCormick*